_____

**SO ORDERED,**

*[signature]*

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: February 26, 2019**

The Order of the Court is set forth below. The docket reflects the date entered.
_____

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

TWO STREETS, INC.,                                            CASE NO. 18-02103-NPO

DEBTOR.                                                       CHAPTER 11

## MEMORANDUM OPINION AND ORDER DENYING CONFIRMATION OF PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11

This matter came before the Court for hearing on February 5, 2019 (the "Confirmation Hearing"), on the Plan of Reorganization for Small Business Under Chapter 11 (the "Plan") (Dkt. 80) filed by the debtor, Two Streets, Inc. ("Two Streets"), the Court having previously entered the Order Conditionally Approving Disclosure Statement, Fixing Time for Filing Acceptances or Rejections to the Plan, and Fixing the Time for Filing Objections to the Disclosure Statement and to the Confirmation of the Plan, Combined with Notice Therefore and of the Hearing on the Final Approval of the Disclosure Statement and the Hearing on Confirmation of the Plan (Dkt. 81) pursuant to 11 U.S.C. §§ 101(51C) and (51D) in the above-referenced bankruptcy case (the "Corporate Case"). Three objections to the Plan were filed, including: the Mississippi Department of Revenue's Objection to Disclosure Statement and to Confirmation of Debtor's Plan of

Reorganization (the "MDOR Objection") (Dkt. 86) filed by the Mississippi Department of Revenue (the "MDOR"); the Objection to Confirmation (the "BancorpSouth Objection") (Dkt. 87) filed by BancorpSouth Bank ("BancorpSouth"); and the Objection to Plan of Confirmation (the "Jamieson Objection") (Dkt. 88) filed by Jamieson Manufacturing Co., d/b/a Jamieson Fence Supply ("Jamieson").  Also before the Court at the Confirmation Hearing were the Motion for Approval of Proposed Agreed Order with BancorpSouth Resolving Objection to Confirmation and Clarifying Plan Provisions ("Motion to Approve Proposed Agreed Order") (Dkt. 93) filed by Two Streets and the Jamieson Manufacturing Co., d/b/a Jamieson Fence Supply's Objection to Motion for Approval of Proposed Agreed Order with BancorpSouth Resolving Objection to Confirmation and Clarifying Plan Provisions [Docket No. 93] ("Objection to Proposed Agreed Order") (Dkt. 96) filed by Jamieson.  At the Confirmation Hearing, R. Michael Bolen represented Two Streets; Sylvie D. Robinson represented the MDOR; Les Alvis represented BancorpSouth; J. Walter Newman IV represented Jamieson; and Christopher J. Steiskal represented David W. Asbach, Acting U.S. Trustee for Region 5 (the "U.S. Trustee").  Two Streets offered into evidence one (1) exhibit[1] and presented the testimony of one (1) witness, Daniel Street ("Danny Street"), at the Confirmation Hearing.  No other documents or testimony was offered by any of the parties.  After having heard the evidence and the arguments of counsel, the Court found that the Plan failed to meet the feasibility requirement of 11 U.S.C. § 1129(a)(11) and, therefore, denied confirmation.

---

[1] This exhibit is cited as "(Debtor Ex. 1)".

The Court also denied the Motion to Approve Proposed Agreed Order as moot. This Opinion memorializes and supplements the Court's bench ruling.[2]

## Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L), and (O). Notice of the Confirmation Hearing was proper under the circumstances.

## Facts

According to the Voluntary Petition for Non-Individuals Filing for Bankruptcy (Dkt. 1) and the Disclosure Statement for Small Business Under Chapter 11 (the "Disclosure Statement") (Dkt. 79), Two Streets is a Mississippi corporation d/b/a All-Metro Fence Company solely owned and managed by Danny Street. Two Streets has been in the business of commercial and residential fence construction and repair since 2005. Two Streets owns an office building and shop located at 5493 I-55 South in Jackson, Mississippi (the "Office Building & Shop"), a 2012 F-350 truck (the "Truck"), as well as machinery and equipment, including drills, trailers, a welder, two Bobcats with mixing buckets and auger attachments, a forklift, and electric saws (the "Equipment") (Dkt. 3 at 9).

Beginning in 2014, Two Streets encountered cash-flow problems after three customers within a period of six months failed to pay for fence installations performed by the company. (Dkt. 79 at 5). Two of these customers lacked the funds to pay, and the other refused to pay because of a contract dispute. A collection suit brought by Two Streets against the customer with the contract

---

[2]The following constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

dispute was unsuccessful. As a result of its cash-flow problems, Two Streets became delinquent in its payments to Jamieson, its key supplier, and Jamieson sued Two Streets and Danny Street in state court in Dallas, Texas. (Dkt. 3 at 26). While the Texas state court action was pending, Two Streets filed a petition for relief under chapter 11 (the "Petition") (Dkt. 1) on May 29, 2018. The Petition designates Two Streets as a "small business debtor" pursuant to 11 U.S.C. § 101(51)(D).

**Procedural History of Corporate Case**

According to the bankruptcy schedules, BancorpSouth is by far the largest creditor in the Corporate Case. (Dkt. 3 at 2-4). BancorpSouth filed a proof of claim in the amount of $508,445.85 (the "BancorpSouth Claim") (Cl. #6-1) on a loan evidenced by a promissory note dated July 1, 2016 (the "BancorpSouth Loan"). Payment of the loan is secured by first mortgage liens against, and security interests in, all of Two Streets' real property, including the Office Building & Shop, and nearly all of its personal property, including the Equipment (the "BancorpSouth Collateral"). The only asset of Two Streets that is not included in the BancorpSouth Collateral is the Truck, which is subject to a lien in favor of Ally Capital. (Cl. #1-1). According to the bankruptcy schedules, the value of the Office Building & Shop is $175,000.00 (Dkt. 3 at 9), and the value of the Equipment is $250,000.00 (Dkt. 3 at 8-9). It is undisputed that BancorpSouth is an under-secured creditor in the Corporate Case.

Payment of the BancorpSouth Loan also is secured by real property that is not owned by Two Streets. BancorpSouth holds first mortgage liens against property owned by Danny Street and his wife, Patricia Boyce Street ("Patricia Street"), who are guarantors on the BancorpSouth Loan. (Case No. 18-02102-NPO, Cl. #14-1 Pt. 3 at 1-6). This property includes the residence of Danny Street and Patricia Street located at 193 Lakeshire Parkway in Canton, Mississippi, as well

as the residence of Patricia Street's parents located at 157 Lakeshire Parkway in Canton, Mississippi (the "Guarantor Collateral") (*Id.* at 7-63; Case No. 18-02102-NPO, Dkt. 3 at 1-2).

Danny Street and Patricia Street initiated a separate chapter 11 bankruptcy case in case number 18-02102-NPO on May 29, 2018 (the "Individual Case"), and the Guarantor Collateral constitutes property of that estate. The bankruptcy schedules in the Individual Case (Case No. 18-02102-NPO, Dkt. 3 at 10-11) value the Guarantor Collateral at $740,000.00, however, the residence at 157 Lakeshire Parkway is subject to a consumer mortgage lien in favor of BancorpSouth in the amount of $110,648.51 that is senior to the lien that secures the BancorpSouth Claim. (Case No. 18-02102-NPO, Cl. #2-1). Apparently, BancorpSouth is an over-secured creditor in the Individual Case once credit is given for the BancorpSouth Collateral in the Corporate Case.

Two orders entered in the Corporate Case are of particular importance to the Court's evaluation of the Plan. First, the Plan proposes to make continuing payments to BancorpSouth under the Agreed Order Authorizing Use of Cash Collateral and Granting Related Relief (the "Cash Collateral Order") (Dkt. 44), entered in the Corporate Case on June 19, 2018. In the Cash Collateral Order, BancorpSouth agreed to allow Two Streets to use its cash collateral pursuant to an approved budget for a period beginning from the date of the Petition through the earliest of: (1) the payment in full of the Claim; (2) the occurrence of a termination event as defined therein; or (3) November 10, 2018. (Dkt. 44 at 6-7). As adequate protection, Two Streets agreed to grant BancorpSouth first-priority replacement security interests and liens on all of its post-petition accounts and all other personal property acquired post-petition. As additional adequate protection, Two Streets agreed to pay BancorpSouth $2,365.50 per month beginning July 1, 2018.

The second order of particular importance to the Court's analysis of the Plan contemplates the sale of the Office Building & Shop through the marketing efforts of Merck Team Realty, Inc. ("Merck"). In that regard, Two Streets filed the Application to Employ Real Estate Agents (Dkt. 68) to employ Merck in the Corporate Case on September 16, 2018. After BancorpSouth filed an objection (Dkt. 73), the parties resolved their dispute and entered into the Agreed Order Approving Employment of Real Estate Agents (Dkt. 74), which the Court approved on October 15, 2018. According to Danny Street, Merck listed the Office Building & Shop for sale at a price of $175,000.00 in November 2018 but since then, has received only two inquiries about the property and no offers to buy. The listing period with Merck expires March 15, 2019.

On November 26, 2018, Two Streets filed the Disclosure Statement and Plan. The Plan is a liquidating plan; it provides for the liquidation of all assets of Two Streets in the Corporate Case. In summary, Two Streets proposes to abandon the Truck to Ally Capital, to liquidate the BancorpSouth Collateral, to pay the liquidation proceeds to BancorpSouth, and to abandon any unliquidated assets to BancorpSouth.

The Confirmation Hearing originally was set for January 8, 2019, with the 45-day deadline to confirm the Plan expiring on January 10, 2019. (Dkt. 81). The Court granted Two Streets an extension of time under 11 U.S.C. § 1121(e)(3) until February 8, 2019, to confirm the Plan. (Dkt. 91).

**Factual Background**

Danny Street testified at the Confirmation Hearing that he moved to Mississippi after he and his wife retired from their jobs in Texas. He purchased Two Streets in 2005 from Paul Jefcoat, investing $750,000.00 of his own money and financing the balance of the purchase price with loans. At that time, he estimated that Two Streets experienced annual gross income of $1.4 million.

From 2005 until 2008, sales steadily increased, eventually reaching $2 million. A downturn in the economy, however, resulted in a gradual decrease in annual sales. This decline in annual sales is evident from the Statement of Financial Affairs, which shows gross revenue of only $850,000.00 for 2017 and only $350,000.00 for the first five months of 2018. (Dkt. 3 at 25).

Until recently, Danny Street and both of his adult sons, Matthew Street and Jason Street, worked for Two Streets. One son returned to Texas, and the other son accepted employment with another fencing company in Mississippi sometime near the filing of the Petition. Danny Street continued working for Two Streets until November 2018 but stopped receiving a salary in late 2015 or early 2016.

Danny Street filed the Petition on behalf of Two Streets with the intent of retaining most of its assets, reorganizing its debts, and formulating a feasible plan for the future. After both sons made it clear that they were not interested in becoming owners of the business one day, Danny Street switched his focus to winding down Two Streets' business activities and liquidating its assets. This decision led him to retain Merck to market and sell the Office Building & Shop and to abandon the Truck to Ally Capital. As to the remaining assets, he intends to sell the Equipment himself on a piecemeal basis through word of mouth. As evidence of his ability to sell the Equipment, he testified that the owner of the business located next door to Two Streets recently expressed an interest in buying one of the Bobcats, and an individual whose name he did not disclose approached him years ago about buying the forklift. He testified that his familiarity with the Equipment and his contacts in the fencing industry will result in a greater recovery for the estate than from any foreclosure sale by BancorpSouth.

In November 2018, Danny Street accepted full-time employment with Jefcoat Fence Company, a direct competitor of Two Streets owned by Jere Jefcoat.[3]  His current job duties at Jefcoat Fence Company are similar to those he performed at Two Streets.

Although Two Streets currently has no employees, it continues to operate its business through subcontractors.  According to Danny Street, Two Streets has entered into contracts with Willard F. Bond Home, Haviors Auto Care, and Eager Architects for installations that should be completed within the next three weeks.  From these jobs, Danny Street testified that Two Streets will receive a profit of approximately $25,000.00, which will be used to pay MDOR and service the BancorpSouth Loan.  After the completion of these contracts, Two Streets will cease all business operations.  With respect to the Individual Case, Danny Street estimated that there is substantial equity in the estate, including his residence and the house occupied by his in-laws, to pay all creditors in full, including the creditors in the Corporate Case after the liquidation of all non-exempt assets in both estates.

**The Plan**

The Plan designates four classes of claims.  In Article 2: Classification of Claims & Interests ("Article 2"), Class 1 consists of all priority claims; Class 2 consists of the BancorpSouth Claim and the secured claim of Ally Capital; Class 3 consists of all non-priority unsecured claims; and Class 4 consists of the equity interests of Two Streets. (Dkt. 80 at 1).  In Article 4: Treatment of Claims and Interests Under the Plan ("Article 4"), the classification of the claims is different, assumedly not by design. (Dkt. 80 at 2).  In Article 4, Class 1 consists of the BancorpSouth Claim

---

[3] Paul Jefcoat is a pre-petition creditor in the Corporate Case, but Jere Jefcoat, Danny Street's employer and the owner of Jefcoat Fence Company, is not.  Jere Jefcoat, however, has sold supplies to Two Streets post-petition.

Page 8 of 17

rather than all priority claims, and Class 2 consists solely of the secured claim of Ally Capital rather than both the BancorpSouth Claim and the secured claim of Ally Capital.

Regardless, Two Streets proposes in Article 4 to treat Class 1 by continuing to make monthly adequate protection payments to BancorpSouth in the amount set forth in the Cash Collateral Order and liquidating the BancorpSouth Collateral with the approval of the Court and the agreement of BancorpSouth. In Class 2, Two Streets proposes to abandon the Truck to Ally Capital and to treat any deficiency as an unsecured claim. Two Streets proposes to pay nothing to the unsecured creditors that comprise Class 3. The equity security holders in Class 4 will receive no distribution under the Plan.

BancorpSouth and MDOR initially objected to confirmation of the Plan. Jamieson also objected to confirmation of the Plan but unlike BancorpSouth and MDOR did not resolve its dispute with Two Streets before the Confirmation Hearing. As evidenced by the Ballot Summary and Certification (Dkt. 90 & Debtor Ex. 1), BancorpSouth voted to conditionally accept the Plan. In Class 3, Jamieson, the only voting creditor with an unsecured claim, voted to reject the Plan. Both BancorpSouth and MDOR supported the Plan, as modified, at the Confirmation Hearing.

**BancorpSouth Objection & Jamieson Objection to Proposed Agreed Order**

In the BancorpSouth Objection, BancorpSouth pointed out that Article 2 and Article 4 classify the BancorpSouth Claim differently, an oversight that requires correction. (Dkt. 87 at 4). Its main objection to the Plan, in summary, is the Plan's failure to provide a time frame for liquidation of the BancorpSouth Collateral or for the accounting of the receipt and disbursement of proceeds from the liquidation. (Dkt. 87 at 4-5).

On January 10, 2019, Two Streets filed the Motion to Approve Proposed Agreed Order to which it attached a copy of the proposed Agreed Order Resolving Objection to Confirmation (the

"Proposed Agreed Order") (Dkt. 93-1) approved by BancorpSouth. The Proposed Agreed Order resolves the inconsistency in the classification of claims in Article 2 and Article 4 so that Class 1 consists of all administrative claims; Class 2 consists of the secured claim of Ally Capital; Class 3 consists of all unsecured, non-priority claims; Class 4 consists of equity interests; and Class 5 consists of the BancorpSouth Claim. Additionally, there are two substantive changes to the Plan. First, the Proposed Agreed Order changes the treatment of Class 3 so that each member will receive a *pro rata* share of any proceeds from the liquidation of the BancorpSouth Collateral, should any such proceeds remain after payment in full of the administrative claims and the BancorpSouth Claim. It does not appear, however, that there will be any funds to pay unsecured creditors. Second, the Proposed Agreed Order amends the Cash Collateral Order by: (1) allowing the BancorpSouth Claim in the amount of $512,077.39, which includes post-petition interest and attorneys' fees of $8,323.00 with credit for all adequate protection payments made by Two Streets under the Cash Collateral Order as of December 20, 2018; and (2) increasing adequate protection payments from $2,365.50 to $4,500.00, effective January 1, 2019.

Other changes to the Plan address the liquidation process. Two Streets must pay all sale proceeds directly to BancorpSouth, and, in the event that the BancorpSouth Collateral has not been sold by March 16, 2019, BancorpSouth is free to pursue its rights and remedies without further order of the Court.

At the Confirmation Hearing, Two Streets and BancorpSouth asked the Court to consider the Plan in the context of both the Corporate Case and the Individual Case. They maintained that payment to BancorpSouth in the Corporate Case will reduce the debt owed BancorpSouth in the Individual Case, at which point BancorpSouth will be an over-secured creditor in the Individual Case. They justified the payment of BancorpSouth's attorneys' fees and post-petition interest in

the Corporate Case on BancorpSouth's status as an over-secured creditor in the Individual Case. They admitted, however, that the Corporate Case and the Individual Case have not been substantively consolidated, and their estates remain separate.

In its Objection to Proposed Agreed Order, Jamieson, an unsecured creditor, argued that the Proposed Agreed Order "is an improper attempt to amend the Plan and gerrymander an accepting impaired class while paying 'adequate protection payments' in twice the amount of previous payments." Jamieson filed a proof of claim (Cl. #9-1) in the amount of $65,520.14 in the Corporate Case for goods sold on account.[4] At the Confirmation Hearing, Jamieson questioned the need for post-confirmation adequate protection payments and argued that the Cash Collateral Order expired by its own terms on November 10, 2018. Jamieson contended that the Plan, as modified by the Proposed Agreed Order, requires the estate to bear the costs to liquidate the BancorpSouth Collateral when such costs should be borne by BancorpSouth. Moreover, Jamieson asserted that including post-petition interest payments and attorneys' fees in the BancorpSouth Claim is improper given BancorpSouth's status as an under-secured creditor in the Corporate Case. *See* 11 U.S.C. § 502(b)(2) (disallowing a claim to the extent that it seeks unmatured interest).

**Jamieson Objection**

Jamieson not only opposed the Proposed Agreed Order but also objected to the Plan. Jamieson argued that the Plan lacks feasibility based on the monthly operating reports (the "MORs") filed in the Corporate Case. The MOR for September 2018 (Dkt. 77) shows a positive net cash flow of $6,468.00; for October 2018 (Dkt. 78) shows a negative net cash flow of

---

[4] In the Individual Case, Jamieson filed a proof of claim (Case No. 18-02102-NPO, Cl. #17-1) in the same amount based on guaranties signed by Danny Street and Patricia Street.

$4,195.00; for November 2018 (Dkt. 85) shows a positive net cash flow of $13,123.34 but projects a negative net cash flow for December 2018; and for December 2018 (Dkt. 97) shows a negative net cash flow of $13,413.00. When questioned about the MORs, Danny Street agreed that as of the date of the Confirmation Hearing, Two Streets did not have sufficient funds to pay BancorpSouth the adequate protection payments required by the Plan, as amended by the Proposed Agreed Order.

To mitigate his admission, Danny Street volunteered that he had paid approximately $1,400.00 from his personal account to Two Streets or, in other words, he seemed to suggest that Two Streets would fund the Plan from an outside source, if necessary. He admitted under further questioning that these transfers were without Court approval to loan money in the Individual Case or to borrow money in the Corporate Case. This admission appears to support the allegation in the Jamieson Objection that Two Streets (through Danny Street) "is shuffling assets" between the Corporate Case and the Individual Case. (Dkt. 88 at 1).

**MDOR Objection**

MDOR objected to the Disclosure Statement on the ground that it failed to provide any information about payment of the liabilities owed MDOR and, moreover, that it underestimated the amount of MDOR's pre-petition proof of claim and administrative claims. MDOR filed a proof of claim for unpaid sales and withholding taxes in the amount of $18,363.90 (Cl. #2-3); an administrative claim for unfiled and unpaid sales taxes of $1,563.36 for June 2018 (Cl. #8-2); and an administrative claim for unfiled and unpaid sales and withholding taxes of $11,417.65 for the months of July through December 2018 (Cl. #10-3); *see* 11 U.S.C. § 503(b)(1)(B)-(D). Yet the Disclosure Statement estimates MDOR's pre-petition claim at only $10,002.32 (Dkt. 79 at 8) and makes no mention of MDOR's administrative claims (*Id.* at 7-8).

At the Confirmation Hearing, counsel for MDOR announced the resolution of the MDOR Objection. Two Streets had agreed to pay MDOR's unpaid sales and withholding taxes in full within thirty (30) days of the Plan's effective date. When questioned, counsel for Two Streets represented to the Court that Two Streets did not have the funds to pay MDOR at that time but anticipated that it would obtain the necessary funds from its business operations within three weeks.

**U.S. Trustee**

The U.S. Trustee did not file a written response but instead adopted a "wait and see" approach. After hearing the testimony of Danny Street, counsel for the U.S. Trustee asserted his position at the Confirmation Hearing that the Corporate Case should be converted to a chapter 7 case or dismissed.

## Discussion

When Two Streets filed the Petition, it elected the "small business" provisions of 11 U.S.C. § 101(51C).[5] In small business cases, § 1129(e) provides that "the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3)." 11 U.S.C. § 1129(e). Section 1121(e)(2) provides that "the plan and a disclosure statement (if any) shall be filed not later than 300 days after the date of the order for relief." 11 U.S.C. § 1121(e)(2). Thus, the time frame from filing to confirmation should last no longer than 345 days. Failing to do so violates § 1121(e)(1)-(2) and § 1129(e),

---

[5] Hereinafter, the "Code" refers to the U.S. Bankruptcy Code found at Title 11 of the U.S. Code, and all code sections refer to the Code unless specifically noted otherwise.

absent a timely request for an extension of time pursuant to § 1121(e)(3). Here, the Court extended the 45-day deadline for confirmation of the Plan, at the request of Two Streets (Dkt. 89), through February 8, 2019. (Dkt. 91).

As the proponent of the Plan, Two Streets must establish by a preponderance of the evidence that the Plan meets all confirmation requirements set forth in § 1129(a). *Heartland Fed. Sav. & Loan Ass'n v. Brisco Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir. 1993). If all the requirements of § 1129(a) except § 1129(a)(8) have been met, however, the Plan still may be confirmed if it meets the cramdown alternative of § 1129(b). Because the Court finds that the provisions of § 1129(a)(11) have not been met, it is unnecessary for the Court to consider any of the other requirements for confirmation.

Section 1129(a)(11) embodies what is known as the "feasibility" test for confirmation. A plan is feasible if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . , unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11); *Save Our Springs (S.O.S.) Alliance, Inc. v. WSI (II)-COS, L.L.C. (In re Save Our Springs (S.O.S.) Alliance, Inc.)*, 632 F.3d 168, 172 (5th Cir. 2011). The feasibility standard requires a court to consider whether the plan offers a reasonable probability of success. *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 801 (5th Cir. 1997). "Debtors are not required to view business and economic prospects in the worst possible light." *Id.* at 802. When assessing whether a plan of reorganization is feasible, bankruptcy courts consider factors such as the adequacy of the debtor's capital structure, the earning power of the business, economic conditions, the ability of management, the probability of the continuation of the same management, and any other related matter. *In re Mortg. Inv. Co. of El Paso, Tex.*, 111 B.R. 604, 611 n.8 (Bankr. W.D.

Tex. 1990). "[A] court can weigh (or indeed ignore) various factors as its discretion." *In re Geijsel*, 480 B.R. 238, 257 (Bankr. N.D. Tex. 2012).

The feasibility analysis, however, differs when assessing a liquidating plan. The focus of the analysis is whether the liquidation itself, as proposed in the plan, is feasible. *Holmes v. United States (In re Holmes)*, 301 B.R. 911, 914 (Bankr. M.D. Ga. 2003). In other words, "§ 1129(a)(11) requires a debtor to show that it can accomplish what it proposes to do, in the time period allowed, on the terms set forth in the plan." *In re Star Ambulance Serv., LLC*, 540 B.R. 251, 266 (Bankr. S.D. Tex. 2015); *see In re CRB Partners, LLC*, No. 11-11924, 2013 WL 796566, at *7 (Bankr. W.D. Tex. Mar. 4, 2013) ("One purpose of the feasibility test is to weed out plans that promise more than debtors can deliver.").

The Court finds that the Plan fails to demonstrate financial feasibility. Two Streets failed to demonstrate that there will be sufficient funds to pay the administrative and priority claims of MDOR totaling $31,344.91 and adequate protection payments to BancorpSouth of $4,500.00 per month within the time frame proposed in the Plan. Two Streets relies on anticipated profits of $25,000.00 from three unfinished jobs to fund these payments. The only evidence presented at the Confirmation Hearing in that regard was the testimony of Danny Street, who provided the contract price for each job and a brief description of each installation before estimating the total profit. Absent from the record were copies of the contracts or a set of plans for each job, or a list of the costs for materials and labor. Such detailed evidence was necessary under these facts where the MORs show that Two Streets' business operations are not yielding a consistent profit. (Dkt. 77, 78, 85, 97). Indeed, the most recent MOR shows a negative net cash flow of $13,413.00. (Dkt. 97). A test of the reliability of a debtor's projections as to its earning power is its performance during the period of the bankruptcy case. *In re Geijsel*, 480 B.R. at 258. Here, the MORs

demonstrate that Two Streets has struggled to maintain a positive cash flow during the Corporate Case when its adequate protection payments to BancorpSouth are forty percent (40%) less than they are in the Plan.

During questioning about Two Streets' ability to meet its obligations under the Plan, Danny Street indicated that he has transferred funds in the amount of $1,400.00 from the Individual Case to the Corporate Case without Court approval. This admission is troubling for two reasons. First, it demonstrates that Two Streets has been unable to produce sufficient cash flow during the pendency of the Corporate Case to meet its post-petition operating expenses, including the payment of withholding and sales taxes. This infusion of funds, moreover, likely inflated Two Streets' net operating income, thus distorting a true picture of its business performance during the pendency of the Corporate Case. Second, it shows that Two Streets, through the actions of Danny Street, likely has violated § 364(b), which requires a debtor to obtain prior authorization before incurring unsecured debt other than in the ordinary course of business. The Court questions the ability of Danny Street to fulfill his fiduciary duties to Two Streets and to satisfy the obligations of the Plan while managing the liquidation process, complying with the Code, and working for Jefcoat Fence Company, which might prefer that its competitor be eliminated from the marketplace. *See Home Tel. Co. v. Darley*, 355 F. Supp. 992, 999 (N.D. Miss. 1973).

The liquidation process itself also is problematic. Merck has received no offers to buy the Office Building & Shop since the property was first listed for sale in November 2018. Yet the Plan, as modified, proposes to sell the Office Building & Shop by March 19, 2019, a relatively short time when the previous three months have yielded no serious inquiries. Danny Street testified that Merck recently suggested lowering the asking price of the Office Building & Shop, which indicates that Danny Street's valuation of $175,000.00 may have been inflated.

Also, Danny Street proposes to liquidate the Equipment himself in a piecemeal fashion. He mentioned having been approached by two prospective buyers who inquired about two different machines, but only one of the inquiries was recent and neither inquiry was the result of his own marketing efforts to sell the Equipment. Danny Street's full-time employment with Jefcoat Fence Company obviously limits his availability to market and to sell the Equipment, but his less time-consuming word-of-mouth approach is not likely to generate a greater recovery for the estate than a foreclosure sale.

## Conclusion

Because Two Streets has not demonstrated by a preponderance of the evidence that the Plan is feasible (even as clarified by the Proposed Agreed Order), the Court finds that the Plan should not be confirmed. The 45-day deadline for confirmation of the Plan, as extended by the Court through February 8, 2019, has expired, and, therefore the Plan is no longer eligible for confirmation.

IT IS, THEREFORE, ORDERED that the confirmation of the Plan is denied.

IT IS FURTHER ORDERED that the Motion to Approve Proposed Agreed Order is denied as moot.

##END OF OPINION##